UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| MARK DOUGLAS BAIN,<br><br>　Plaintiff,<br><br>v.<br><br>SOCIAL SECURITY ADMINISTRATION,<br><br>　Defendant. | Case No. 2:20-cv-00052<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:　The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

**REPORT AND RECOMMENDATION**

　　Plaintiff Mark Douglas Bain filed this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) denying his application for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f. (Doc. No. 1.) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 3.) Before the Court is Bain's motion for judgment on the administrative record (Doc. No. 16), to which the Commissioner has responded in opposition (Doc. No. 17), and Bain has filed a reply (Doc. No. 18). Having considered the parties' arguments and the administrative record as a whole, and for the reasons that follow, the Magistrate Judge will recommend that the Court grant Bain's motion for judgment on the administrative record.

**I.　Background**

　　**A.　Bain's SSI Application**

　　Bain applied for SSI on October 26, 2017, alleging that he had been disabled and unable to work since April 6, 2011, because of social anxiety, anxiety, panic attacks, and sleep apnea.

(AR 211–12.[1]) The Commissioner denied Bain's application initially and on reconsideration. (AR 223, 241.) At Bain's request, an administrative law judge (ALJ) held a hearing regarding his application on April 9, 2019. (AR 38–63, 258–60.) Bain appeared by video with counsel and testified. (AR 38, 40, 42–60.) The ALJ also heard testimony from a vocational expert. (AR 60–62.)

### B. The ALJ's Findings

On July 9, 2019, the ALJ issued a written decision finding that Bain was not disabled within the meaning of the Social Security Act and denying his claim for SSI. (AR 23–32.) The ALJ made the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since October 26, 2017, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: social anxiety, depressive disorder, panic disorder, generalized anxiety disorder, obsessive compulsive disorder (OCD), obstructive sleep apnea, obesity, hypertension, and gout (20 CFR 416.920(c)).

\* \* \*

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

\* \* \*

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less [than] the full range of light work as defined in 20 CFR 416.967(b). He can occasionally climb, balance, stoop, kneel, crouch or crawl. He should avoid concentrated exposure to pulmonary irritants. He can perform simple and detailed tasks, where interaction with coworkers and supervisors is occasional and there is no interaction with the general public. He is limited to work where changes in the workplace are occasional.

---

[1] The transcript of the administrative record (Doc. No. 14) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

\* \* \*

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on August 30, 1973, and was 44 years old, which is defined as a younger individual age 18–49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

\* \* \*

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 26, 2017, the date the application was filed (20 CFR 416.920(g)).

(AR 26–32.) The Social Security Appeals Council denied Bain's request for review on June 24, 2020, making the ALJ's decision the final decision of the Commissioner. (AR 1–7.)

### C. Appeal Under 42 U.S.C. § 405(g)

Bain filed this action for review of the ALJ's decision on August 27, 2020 (Doc. No. 1), and this Court has jurisdiction under 42 U.S.C. § 405(g). Bain argues that the ALJ erred in determining that his medical impairments do not meet or are not medically equivalent to one of the impairments on the SSA's list of impairments considered severe enough to be disabling. (Doc. No. 16-1.) Specifically, Bain argues that he meets the criteria for listing 12.06 in 20 C.F.R. part 404, subpart P, appendix 1, which covers anxiety and obsessive-compulsive disorders. (Doc. No. 16-1.) The Commissioner responds that substantial record evidence supports the ALJ's determination that Bain's impairments do not meet or medically equal the criteria in listing 12.06. (Doc. No. 17.) Bain's reply reiterates his initial arguments. (Doc. No. 18.)

### D. Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## II. Legal Standards

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

### B. Determining Disability at the Administrative Level

Bain applied for SSI under Title XVI of the Social Security Act, which "is a welfare program" that provides "benefits to financially needy individuals who are aged, blind, or disabled regardless of their insured status." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988). "Disability" is defined in this context as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (explaining that this definition applies to SSI claims under Title XVI as well as disability insurance benefit claims under Title II).

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. § 416.920(a)(4). At step one, the ALJ considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). "If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis." *Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995). At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the 12-month durational requirement. 20 C.F.R. § 416.920(a)(4)(ii). "If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis." *Garcia*, 46 F.3d at 554 n.2. At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that "identifies and defines impairments that are of sufficient severity as to prevent any gainful activity." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); *see* 20 C.F.R. § 416.920(a)(4)(iii). "If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant

is conclusively presumed to be disabled without further analysis." *Garcia*, 46 F.3d at 554 n.2. If not, the ALJ proceeds to step four.

At step four, the ALJ evaluates the claimant's past relevant work and "residual functional capacity" 20 C.F.R. § 416.920(a)(4), which is defined as "the most [the claimant] can still do despite [his] limitations" *id.* § 416.945(a)(1); *see id.* § 416.920(a)(iv). Past work is relevant to this analysis if the claimant performed the work within the past 15 years, the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it. *Id.* § 416.960(b)(1). If the claimant's residual functional capacity (RFC) permits him to perform past relevant work, "benefits are denied without further analysis." *Garcia*, 46 F.3d at 554 n.2. If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, in light of his residual functional capacity, age, education, and work experience, a claimant can perform other substantial gainful employment. 20 C.F.R. § 416.920(a)(4)(v). While the claimant bears the burden of proof during the first four steps, at step five the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). "If the claimant is able to perform other work in the national economy, . . . benefits are denied." *Garcia*, 46 F.3d at 554 n.2. If the claimant is unable to perform other work, the ALJ will find that the claimant is disabled.

**III.     Analysis**

Bain argues that the record lacks substantial evidence to support the ALJ's findings that Bain (1) has only a moderate limitation in interacting with others under paragraph B of listing 12.06 and (2) does not meet the criteria in paragraph C of the same listing. (Doc. Nos. 16-1, 18.) The Commissioner responds that Bain has failed to satisfy his burden to show that his impairments

meet or equal listing 12.06's paragraph B or C criteria and that the ALJ's determinations are supported by substantial record evidence. (Doc. No. 17.)

### A.   Listing 12.06[2]

The "Listing of Impairments . . . in appendix 1 of subpart P of part 404 of" chapter 20 of the Code of Federal Regulations "describes for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). Listing 12.06 describes "[a]nxiety and obsessive-compulsive disorders" that the SSA considers disabling. *Id.* pt. 404, subpt. P, app. 1, § 12.06. Like other listings for mental disorders, listing 12.06 "ha[s] three paragraphs, designated A, B, and C[.]" *Id.* § 12.00(A)(2). To meet or medically equal this listing, a claimant must satisfy the paragraph A criteria and either the paragraph B or paragraph C criteria. *Id.* §§ 12.00(A)(2), 12.06.

Paragraph A requires medical documentation of an anxiety disorder, panic disorder or agoraphobia, or obsessive-compulsive disorder. *Id.* § 12.06(A)(1)–(3).

Paragraph B requires one "[e]xtreme limitation" or two "marked limitation[s]" in "the following areas of mental functioning": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* § 12.06(B)(1)–(4). An individual with an "[e]xtreme limitation" in one of these areas is "not able to function in th[e] area independently, appropriately, effectively, and on a sustained basis." *Id.* § 12.00(F)(2)(e). A "[m]arked limitation" means an individual's

---

[2]   The ALJ also considered whether Bain's impairments met or medically equaled listing 12.04, which describes "[d]epressive, bipolar and related disorders" that the SSA considers disabling. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. Bain does not challenge the ALJ's 12.04 findings.

"functioning in th[e] area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id.* § 12.00(F)(2)(d). By contrast, a "[m]oderate limitation" means an individual's "functioning in th[e] area independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00(F)(2)(c).

Paragraph C requires a showing that the individual "ha[s] a medically documented history of the existence of the disorder over a period of at least 2 years" and "evidence of both:" (1) "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the individual's] mental disorder . . ."; and (2) "[m]arginal adjustment," which means "hav[ing] minimal capacity to adapt to changes in [one's] environment or to demands that are not already part of [the individual's] daily life . . . ." *Id.* § 12.06(C)(1)–(2). The ongoing medical treatment criterion in paragraph (C)(1) is satisfied "when the medical evidence establishes that [the claimant] obtain[s] medical treatment with a frequency consistent with accepted medical practice for the type of treatment or evaluation required for [the claimant's] medical condition." *Id.* § 12.00(G)(2)(b). The marginal adjustment criterion in paragraph (C)(2) is satisfied "when the evidence shows that changes or increased demands have led to exacerbation of [the claimant's] symptoms and signs and to deterioration in [the claimant's] functioning[.]" *Id.* § 12.00(G)(2)(c). "[F]or example, [the claimant] ha[s] become unable to function outside of [their] home or a more restrictive setting, without substantial psychosocial supports . . . ." *Id.* Psychosocial supports may include "receiv[ing] help from family members or other people who monitor [the claimant's] daily activities and help [the claimant] to function." *Id.* § 12.00(D)(1)(a).

The ALJ found, based on medical evidence, that Bain has social anxiety, panic disorder, generalized anxiety disorder, and obsessive-compulsive disorder, among other conditions.

(AR 26.) The Commissioner therefore does not dispute that Bain meets the paragraph A criteria of listing 12.06. (Doc. No. 17.) The question before the Court in this appeal is whether substantial evidence supports the ALJ's findings that Bain did not meet the paragraph B or C criteria of listing 12.06.

### B. The ALJ's Finding that Bain Has Only a Moderate Limitation Interacting with Others Under Paragraph B Is Not Supported by Substantial Record Evidence

Bain argues that the ALJ's finding that he has only a moderate limitation in his ability to interact with others lacks the support of substantial record evidence. (Doc. No. 16-1.) The SSA defines "[i]nteracting with others" as "the abilities to relate to and work with supervisors, co-workers, and the public." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(E)(2); *see also id.* ("Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness."). The SSA promises claimants that it "will determine the degree to which [a claimant's] medically determinable mental impairment affects the four areas of mental functioning [listed in paragraph B,]" including interacting with others, in terms of the claimant's "ability to function independently, appropriately, effectively, and on a sustained basis . . . ." *Id.* § 12.00(A)(2)(b).

The ALJ offered the following analysis regarding Bain's ability to interact with others under listing 12.06's paragraph B criteria:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing[ ] . . . 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of

> functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.
>
> \* \* \*
>
> In interacting with others, the claimant has a moderate limitation. The claimant testified that he lived with his father. Prior to his trip to Japan, the claimant spent two nights at his sister's home. The claimant reported problems being around others; yet, he reported he occasionally shops in stores for groceries for short trips with his father and he accesses Facebook (Exhibits B3E and B9E). Although he testified to not attending church in the last few years, the claimant reported to a provider that he went to church in March 2019 (Exhibit B14F/5). He was described by providers as pleasant and cooperative. He reported that he had been fired previously for failing to get along with other people (Exhibits B3E and B9E). He reported communicating with family members using the internet and eating out occasionally (*Id*). He testified that he and his father traveled to Japan in September 2018, which included a 13-hour flight and riding a train while in Japan. The record shows the claimant has joined a gym (Exhibit B11F/6).

(AR 26–27.) The ALJ also found moderate limitations in the areas of understanding, remembering, or applying information; concentrating, persisting or maintaining pace; and adapting or managing oneself. (*Id.*) Bain has not challenged the ALJ's findings in those three areas. The ALJ concluded that, because Bain's "mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied." (AR 27.)

The Court finds that the ALJ's conclusion that Bain has only a moderate limitation in interacting with others is not supported by substantial record evidence. Most of the record evidence that the ALJ cites involves occasional activities that Bain engaged in with his father. These activities do not provide substantial support for a finding that Bain has a fair ability to relate to and interact with others independently and on a sustained basis as required under the regulations. The few potentially independent activities the ALJ cites also do not provide substantial support for a finding that Bain has a fair ability to relate to and interact with others in a workplace setting

independently, appropriately, effectively, and on a sustained basis as required to find that Bain had a moderate limitation under § 12.00(F)(2)(c).

The fact that Bain lives with his father and once spent two nights at his sister's house does not support a finding that he has a fair ability to interact with others as defined by the regulations. *See Elliott v. Comm'r of Soc. Sec.*, No. 1:20-CV-00545, 2021 WL 2926109, at *15 (N.D. Ohio June 29, 2021) (recommending remand where "ALJ's decision . . . fail[ed] to address how being able to spend time with only his mother and sister . . . is reflective of [claimant's] ability to interact with others independently, appropriately, effectively, and on sustained basis, as would be required in a work setting"), *report and recommendation adopted*, 2021 WL 2917647 (N.D. Ohio July 12, 2021). This is especially so because Bain testified that his father accompanied him when he stayed at his sister's house, and he therefore was not functioning independently. (AR 52.)

The ALJ cited function reports completed by Bain's father to support a finding that Bain "occasionally shops in stores for groceries for short trips with his father . . . ." (AR 27.) The function reports state that Bain "do[es] not go to stores alone" but "sometimes" "go[es] with [his] Dad . . . for short groc[ery] shopping" trips. (AR 341, 378.) Bain testified at his hearing that he "go[es] to the Dollar General [store] next to [his] house with [his] dad" "[m]aybe once a month" (AR 46–47), but would feel "[f]airly anxious" "by [him]self in a convenience store" because of the possibility that "somebody could come in and rob it or do something" (AR 59). This evidence of occasional shopping trips with his father close to home does not support a finding that Bain has a fair ability to relate to and work with people in a workplace independently, appropriately, effectively, and on a sustained basis. *See Elliott*, 2021 WL 2926109, at *15 (recommending remand where "ALJ's decision . . . fail[ed] to address how . . . going to the store for short periods

of time is reflective of [claimant's] ability to interact with others independently, appropriately, effectively, and on sustained basis, as would be required in a work setting").

The ALJ also pointed to Bain's ability to "access[ ] Facebook" and "communicat[e] with family members using the internet" as evidence that Bain has a fair ability to interact with others and again cited the function reports Bain's father completed on his behalf. (AR 27.) The function reports state that Bain "check[s] social media" during the day and "spend[s] time with" "family" on "Facebook[.]" (AR 339, 342, 376, 379.) Even assuming that Bain engages in these activities independently, this evidence—considered alone or in combination with other record evidence—does not provide substantial support for finding that Bain has a fair ability to relate to and interact with people in a workplace independently, appropriately, effectively, and on a sustained basis. The Sixth Circuit held in *Nash v. Commissioner of Social Security*, No. 19-6321, 2020 WL 6882255, at *3 (6th Cir. Aug. 10, 2020), that a claimant's "occasional[ ] use[ ] [of] Facebook" supported an ALJ's finding that the claimant had a moderate limitation in interacting with others, but only as part of a record that also included evidence of the claimant's "ability to live in her own house with her son, her regular visits with her relatives, going to church, her attendance at group-therapy sessions, and her use of [her] cell phone . . . ." There is little or no similar corroborating evidence in the record here.

The ALJ's finding that Bain "testified to not attending church in the last few years" but "reported to a provider that he went to church in March 2019" misstates Bain's testimony. (AR 27.) The hearing transcript shows that Bain testified that he had not "been to church hardly at all in the past three to five years" because "[i]t's overwhelming" and he is "very uncomfortable talking to people" even when they are "friendly" and "nice . . . ." (AR 46–47; *see also* AR 58 (testifying that Bain "ha[d]n't gone to church much in the last three to five years").) The March

27, 2019 medical record the ALJ cites reports that Bain "[s]tates that he went to church on Sun[day] and enjoyed it 'but [he] was really anxious because everybody kept talking to [him].'" (AR 804; *see also* AR 185 ("Anxiety reported as 'ok but high on Sundays when [he] tr[ies] to go to church.'").) The record does not indicate whether Bain attended church with his father or by himself in March 2019. Regardless, a single instance of attending church in a three-to-five-year period and reported anxiety during that visit does not substantially support a finding that Bain has a fair ability to interact with people in a workplace independently, appropriately, effectively, and on a sustained basis.

The ALJ found that health providers described Bain "as pleasant and cooperative." (AR 27.) This evidence provides some support for finding that Bain can interact with others appropriately, but it does not provide substantial support for finding that he can do so independently, effectively, and on a sustained basis. Bain testified that he sees his "primary physician" "once a year"; "a registered nurse for medication once a month"; "and a counselor once a month." (AR 45–46.) Records from many of these medical visits show that Bain was accompanied by his father during the appointments. (AR 66, 78, 93, 97, 111, 145, 156, 157, 161, 162, 165, 166, 181, 184, 187, 447.) These regular but infrequent interactions with providers while accompanied by his father do not substantially support a finding that Bain can relate to and work with others in a workplace setting independently and on a sustained basis.

The ALJ also cited the function reports completed by Bain's father in finding that Bain reported "eating out occasionally[.]" (AR 27.) The function reports state that Bain "go[es] out to fast food to eat with [his] Dad sometimes." (AR 339, 376.) Bain testified that he and his father go to the same Mexican restaurant "every Monday at 4:00" when "there's nobody there[,]" but "when a lot of people start coming in[,] [they] will leave[.]" (AR 58.) This evidence does not provide

substantial support for finding that Bain has a fair ability to relate to and work with others independently, effectively, appropriately, and on a sustained basis as defined by the regulations.

The ALJ found that Bain "testified that he and his father traveled to Japan in September 2018, which included a 13-hour flight and riding a train while in Japan." (AR 27.) While these facts are accurate, the ALJ considered them out of context. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013) (reversing district court's affirmance of ALJ's denial of benefits where "many of [the ALJ's] examples [we]re either taken out of context or . . . offset by other examples in the record"). Bain testified, and the record shows, that the trip was such "a disaster" that he and his father returned home after only three days in Japan, during which they mostly stayed in a hotel room and did not go out to see any sites. (AR 52–54.) Bain testified that, during the thirteen-hour flight from Atlanta to Tokyo, he "put [his] headphones on and . . . watched movies." (AR 53.) His father stated that "[t]he flight . . . was a challenge for both of us, especially since [Bain] had never flown before. He was extremely anxious in the airport and boarding the plane. Calming himself, after take off, he occupied his mind by watching movies the entire flight." (AR 394.)

Bain testified that, while they were "on the bullet train to head from Tokyo to where [they] were staying in Nara, [his dad] got really sick" with "vertigo" and "it was [a] big mess." (AR 53.) Bain testified that he "had [a] pretty bad . . . panic attack and wasn't much help to" his father. (AR 53.) Bain's father stated that Japanese "medical personnel . . . wanted to take [him] to the hospital" for treatment and he initially agreed, but "[a]s [he] was strapped down for transport, [he] saw [Bain's] . . . expression and body posture . . . indicating [Bain] was in panic mode with high anxieties and . . . scared to death." (AR 394.) Because Bain would not have been allowed to accompany him to the hospital, and because Bain's father "knew [Bain] could not manage without

14

[him] there to keep [Bain] in his comfort area[,]" Bain's father decided not to go to the hospital for treatment. (*Id.*) Instead, he and Bain "waited another hour" until his "dizziness subsided enough for [him] to stagger from bench to bench to get to the next [train] departure site." (*Id.*)

Bain testified that, once they got to their hotel, his father "took care of most of the checking in" and then he and his father "basically just laid in [their] beds in the hotel room until [his father] got better." (AR 53–54.) After his father recovered, they "cut the trip short and c[a]me home." (AR 53.) Bain's father stated that, "[a]fter checking in, [he] passed out and [Bain] told [him] the next day that [Bain] sat naked on the floor for most of the night trying to get himself back to a calm state." (AR 395.) "The next day[,] [Bain] indicated that even though this was a dream trip, he wanted to go home and get back to his normal life staying at home in his comfort area." (*Id.*) Bain's father stated that, "[a]fter [they] got home, [Bain] did not get out of the house for over a week due to anxiety and depression." (*Id.*) Medical records show that Bain also reported to his counselor "that he didn't leave his house for a week after returning" from Japan. (AR 157.) Given this context, Bain's flight to Japan and train ride with his father do not offer substantial support—and, in fact, contradict—the ALJ's finding that Bain has a fair ability to relate to and work with others independently, effectively, appropriately, and on a sustained basis.

The ALJ also found that "[t]he record shows [Bain] has joined a gym." (AR 27 (citing AR 732).) The medical record the ALJ cites for this evidence states only that Bain reported to his counselor that he "ha[d] joined a gym." (AR 732.) It does not state whether or how often Bain attended the gym, whether he did so alone, or whether he interacted with anyone while he was there. The ALJ did not explain how the mere fact of joining a gym supports a finding that Bain has a fair ability to relate to and interact with others independently, appropriately, effectively, and on

15

Case 2:20-cv-00052   Document 19   Filed 02/10/22   Page 15 of 18 PageID #: 913

a sustained basis. This Court finds that, in the context of the other facts contained in the record, it does not.

Accordingly, the ALJ's finding that Bain had only a moderate limitation in interacting with others lacks the support of substantial record evidence. The Commissioner has not argued that this error was harmless, and the Court finds that it was not. A single extreme limitation is enough to satisfy the paragraph B criteria of listing 12.06. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06(B). Bain is entitled to a substantively and procedurally appropriate evaluation of his ability to interact with others under paragraph B. Further, as explained below, remand is also warranted for reconsideration of whether Bain satisfied the paragraph C criteria.

### C. The ALJ's Analysis of Listing 12.06's Paragraph C Criteria Is Not Supported by Substantial Record Evidence

Bain argues that, contrary to the ALJ's findings, he meets paragraph C's criteria because he has received medical treatment "for more than two years" and he "requires the constant care and supervision of his father in order to maintain any sort of emotional stability, cannot live independently and cannot tolerate any changes in his environment, however insignificant." (Doc. No. 18, PageID# 895, 896.)

The ALJ offered the following analysis regarding listing 12.06's paragraph C criteria:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. There is nothing in the record that indicates that the claimant requires an ongoing, highly structured setting due to his mental health issues or that a change in his environment would cause any type of failure to adjust.

(AR 27.)

The Court finds that the ALJ's determination lacks the support of substantial evidence. The criteria in paragraph C(1) can be satisfied by evidence of "[m]edical treatment, mental health therapy, psychosocial support(s), *or* a highly structured setting(s) that is ongoing and that

16
Case 2:20-cv-00052   Document 19   Filed 02/10/22   Page 16 of 18 PageID #: 914

diminishes the symptoms and signs of [a claimant's] mental disorder . . . ." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06(C)(1) (emphasis added); *see also id.* § 12.00(G)(2)(b) (ongoing medical treatment criterion in paragraph C(1) is satisfied "when the medical evidence establishes that [the claimant] obtain[s] medical treatment with a frequency consistent with accepted medical practice for the type of treatment or evaluation required for [the claimant's] medical condition"). While the ALJ states that Bain did not provide evidence of a "highly structured setting" (AR 27), there is no indication that the ALJ considered the substantial record evidence regarding Bain's medical treatment, mental health therapy, and psychosocial support from his father, all of which could potentially satisfy the paragraph C(1) criteria.[3]

The "marginal adjustment" requirement in paragraph C(2) is satisfied "when the evidence shows that changes or increased demands have led to exacerbation of [the claimant's] symptoms and signs and to deterioration in [the claimant's] functioning[.]" *Id.* § 12.00(G)(2)(c). "[F]or example, [the claimant] ha[s] become unable to function outside of [their] home or a more restrictive setting, without substantial psychosocial supports . . . ." *Id.* The ALJ did not point to any record evidence in support of the determination that Bain does not satisfy the C(2) criteria and instead generally asserted that "[t]here is nothing in the record that indicates . . . that a change in [Bain's] environment would cause any type of failure to adjust." (AR 27.) This conclusion bears little relation to the record evidence. As discussed above, there is significant record evidence showing that changes in Bain's routine—including visiting church in March 2019 and the unsuccessful trip to Japan in September 2018—have led to exacerbations of Bain's mental health symptoms and deterioration in his functioning. There is also significant evidence that Bain relies

---

[3]     Similarly, the Commissioner has only argued that Bain "did not live and function in the type of structured setting required under . . . paragraph [C], which contemplates a fairly critical condition . . . ." (Doc. No. 17, PageID# 890.)

on his father for substantial psychosocial support. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(D)(1)(a) (defining psychosocial supports to include "receiv[ing] help from . . . family members or other people who monitor [the claimant's] daily activities and help [the claimant] to function"). It is not clear whether and how the ALJ considered this evidence. The ALJ's opinion therefore fails to "'build an accurate and logical bridge between the evidence and the result.'" *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

Remand is therefore also warranted for reconsideration of whether Bain satisfies the paragraph C criteria of listing 12.06.

IV.     Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Bain's motion for judgment on the record (Doc. No. 16) be GRANTED, that the Commissioner's final decision be VACATED, and that this matter be REMANDED to the Social Security Administration for further administrative proceedings consistent with this Report and Recommendation.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 10th day of February, 2022.

ALISTAIR E. NEWBERN
United States Magistrate Judge